ROANE, Judge.
This is an action of ejectment, brought by the appellants as heirs of P. Byons, the surviving trustee of Pendleton and Byons, under a deed of trust of 4th May 1770, executed to them by the trustees of W. Byrd, under a deed of 18th September 1756. It claims against the appellee, a lot numbered in the plan of the city of Richmond 547. A verdict and judgment was rendered for the defendant, on which the plaintiffs appealed to this court. The verdict was rendered under an instruction xof the superior court, which will presently be more particularly noticed.
If the appellants, the heirs of Byons, have not a complete title to the premises, they ought not to recover in this action. They ought not to recover, although Byrd’s trustees, from whom they claim, should be shewn to have such title, and the appellee should also be shewn to have none. Possession in him is a good title, in this action against any plaintiff except the true owner. This is the established doctrine on this subject. It is emphatically laid down by the court of King’s bench in England, in the case of Haldane v. Harvey. (a)
' The present appellants may not have such a title, for want of adequate words in their deed to convey it, or for want of-a right to the subject, in those under whom they claim. On both these grounds, the title of the appellants appears to me to be defective. The first defect is alone sufficient; but I will also consider, whether the trustees of Byrd themselves had a title, which could have passed by the deed of 4th May 1770, had its terms bden more comprehensive.
Those trustees it is admitted, had the legal right to the land in question, under the deed of 18th Sept. 1756. This land with a great deal of other land was conveyed to them by Byrd, to be disposed of for his benefit. By the scheme of a lottery referred to-in, and made a part of the bill of exceptions, they offered this lot for sale, together with a great many other improved and unimproved lots, and other valuable property. It was the object of the scheme to dispose of all the land therein mentioned by way of lottery, and not a part only of that land. The object of the lottery was, to use the words of the scheme, to dispose of “the land”' therein mentioned; that is, of all the said land, and not merely a part thereof. Again, the scheme purports, to dispose of “the entire towns” of Richmond and Man-Chester; and not the *said towns, in exclusion of the lot in question, and other lots under like circumstances. The construction contended for by the appellants, excludes the lot in question, and departs from the said scheme; whereas, that contended for by the appellee, includes the said lot, and conforms to the scheme aforesaid. The facts proved in the cause, as stated in the bill of exceptions, entirely accord with the construction last mentioned. It was proved, as the exception states, that the lottery was drawn “in conformity to the terms of the said scheme” ; and therefore, as the said scheme extended to the whole land, and lots, it was proved, that it was drawn as to the whole land, including this lot also. Again, it was proved more particularly, *830 that the ticket No. 1963 “drew the lot” now in question. This fact is utterly inconsistent with the idea, that the ticket by which this lot was drawn, was not disposed of, in this lottery aforesaid. It is considered under this finding, as having been so disposed of^even if it were retained by Byrd himself, or his trustees aforesaid. These positive, and unequivocal findings, are not at all impugned bj’ the farther statements, that the ticket 1963 was delivered to John Page, one of Byrd’s trustees, together with a number of others; and that it did not appear by any direct testimony, whether the said ticket was sold by Page, to any other person, or that it was returned to the said Byrd or his trustees. In this uncertainty, we ought perhaps to consider Page as the owner' of the ticket, in whose hands it is last shewn to have been, and who undoubtedly had a right to retain it, or sell it to himself, (b) This statement is entirely consistent with the idea of a sale to Page himself, to Byrd, or to the trustees themselves, by means of the election to be presently noticed, and which would constitute him or them adventurers in the lottery.. This conclusion *must be drawn from the facts found, and from circumstances, notwithstanding it did not appear from any direct testimony, that the ticket was sold to others. Notwithstanding this defect of proof, it might well be inferred, that the- ticket was sold to, or retained by, one or other of the parties aforesaid.
The instruction of the superior court is entirely borne out, by the facts proved in the cause. Those facts could not have been found, unless the ticket in question had been disposed of, by being sold to others, or retained by the parties themselves. Both the judgment, and the proofs on which it rests, repel the idea, that the lottery was-only drawn in part; that it was not drawn as to the ticket in question. It has been said, that such an inference arises from its being stated in the scheme, that the lottery was to be drawn in June 1768, whether as is alleged, the tickets were all sold or not; this last inference is not warranted by any thing contained in the scheme; on the contrary, as it is proved in the cause, that the drawing did not take place ’till November 1768, I would make an inference entirely opposite. I would rather infer, that the delay took place to give time to sell those tickets; and that within that time, they were all sold. (c)
By the scheme found in the case, tickets were to be had also from Cary and Wayles, who were not trustees. If Cary and Wayles did also receive tickets, which they did not sell to others, nor return to the trustees, before the drawing, but stood by, and saw the lottery drawn, -*would it not be held, that they had elected to purchase those tickets themselves. A contrary construction is not only reprobated by the finding, that the lottery was drawn in conformity to the scheme, as aforesaid, which scheme purports to sell all the tickets, but also might have been highly iniquitous as to Byrd. His object was to sell his own property, for a certain sum; but this construction would deprive him of a part of the purchase money, when his whole property might nevertheless have been swept away by the fortunate tickets of others. There is no reason why all or any of these individuals might not sell tickets to themselves. It very often happens that the person instituting a lottery, is himself an adventurer in it. (d) He may not otherwise be able to effectuate the object intended. He may be the vendee as well as the vendor of a lottery ticket. In this case as well as in others, the maxim applies, that when two rights concur in the same person, they are to be considered, as if they were in different persons.
If Byrd’s trustees had a title to this lot therefore, instead of Page, who is shewn to have been the last possessor of the ticket which drew it, it was only by virtue of the drawing. It is not shewn in this case, that they drew the lot in question ; but if they did, their title thereto did not pass to Pen-dleton and Byons by the deed of 4th May 1770. That deed only conveyed such property as had not been, before sold by them, and which they had at that time, a right to sell-—not by virtue of their success in the lottery, “but by virtue of the deed of 1756.” Their right under that deed had been extinguished by the lottery, even if the trustees, themselves, drew the lot in question ; and therefore it did not pass, because it had been, “before sold,” by means of the lottery; *and because it was not property, which they had a right to sell, under, and by virtue of the deed of 1756.” There is nothing in the exception in the deed, respecting prizes drawn by the fortunate adventurers -in the lottery, which can vary the construction. It is at most a mere pleonasm; and it applies to Byrd and his trustees as much as others, if the principles I have stated be correct. Even if they drew this lot, in the lottery aforesaid, this exception expressly withholds this property from the operation of the deed of 4th May 1770. Nor is that construction at all affected by the insertion of the term “lots,” in the conveying part of that deed. It is expressly proved, that there were other lots, not comprehended in thq lottery to satisfy this call in the deed.
This construction of the deed of 4th May 1770 was explicitly recognised by this court in the case of Mayo v. Murchie. (e) It was adopted by me for the same reasons substantially, which are now assigned. One of the other Judges now present, also ad *831 mitted in that case, that if the land then in controversy, had been a “prize drawn” in the lottery, (as the lot in question is explicitly proved to have been) it would not have passed to Pendleton and Ijyons, as he supposed it did;. in which last idea however, he was overruled by the other Judges. It seems clear therefore, both upon the authority of that case, and upon principle, that this lot, even if the title thereto were shewn to have been in Byrd’s trustees, under the lottery, did not pass by the deed of 4th May 1770.
As for the legal title which is asserted to be in Byrd’s trustees, under the deed of 1776, and in consequence of their not having made a deed for the lot to the holder of the ticket, it will be time enough to discuss that point, when those trustees shall become parties. As however, a naked legal title would not probably prevail in their *favor against the cestui que trust, (f) it would probably not prevail against the present appellee, even if those trustees were now plaintiffs. It would probably not prevail, because they would not be considered as the true owners. It would be wrong to oust the appellee of his possession, in favor of a plaintiff, who, notwithstanding this naked legal title, could not recover against the holder of the ticket, and must yield up the land to him. 'ffhe possession of the appellee is only to be yielded up to the true owner. On this point however, I onlj- give my present impressions: it is not now essential to the decision of the cause. I am for these reasons of opinion to affirm the judgment. *

(a) 4 Burr 2487.

 Munf. 358.

(1) Cowp. Rep. 46; Hartv. Knott.